[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the Judicial District of Danbury. Many of the facts that give rise to this action are not in dispute. The plaintiff, whose maiden name is Jennifer P. Zollin, and the defendant, were married on January 29, 1994, at Newtown, Connecticut. The plaintiff has resided continuously in the State of Connecticut for at least twelve months immediately prior to the date the complaint was filed. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There is one minor child issue of the marriage: Nicholas J. Comerford, born June 27, 1994. No other minor children have been born to the plaintiff wife since the date of marriage of the parties. Neither party has received state assistance. The court finds the following additional facts:
The parties separated in July of 1996. When the parties married the plaintiff was not working. When their minor child was approximately one year old, she commenced working part-time at a nail salon called Tanfastic which is a tanning and nail salon. She received commissions based on the number of nails that she does as well as tips.
The plaintiff is twenty-four years old. She graduated high school in 1991 and has completed one year of college. She is in good health.
As a result of the failure of the defendant to make the current pendente lite alimony and support payments, the plaintiff has been required to seek financial assistance from her father. The cost for the plaintiff to obtain health insurance for herself CT Page 11703 only would be $97 monthly. The defendant's employment provides for health insurance for the minor child.
During the summer and fall of 1992, the plaintiff worked as a waitress. Commencing approximately September of 1992, she worked for a jeweler in the Danbury Mall during the same time as she was working as a waitress. In September of 1993, the parties commenced residing together. Her next employment was in July of 1995. She did not work between June of 1993 and July of 1995. The plaintiff was not working during that period of time by agreement with the defendant. The parties agreed that she would not work for a period of time after their minor child was born. In July of 1995, she commenced working at Tanfastic as a nail technician. She initially was earning $7 hourly working nine hours per week. Between July, 1996 and October, 1996, she was working as a waitress serving food and drinks. She left that position to go to work for another establishment in July of 1996, where she remained until October of 1996, working as a waitress. She remained at that position until the end of June, 1997, making approximately $60 weekly in salary, plus an additional $40 average weekly in tips. After leaving that position, she went to bartender school for about two weeks and graduated on or about July 20, 1997.
The COBRA cost for medical and dental for the plaintiff only would be $250 monthly. The COBRA cost for the plaintiff only for medical would be $175 monthly.
The plaintiff resides in a mobile home that she rents. The $123 weekly rent shown on her financial affidavit, dated September 9, 1997, is a combination of monthly rent of $266 plus $262 for the mobile home and the lot. The plaintiff owns a 1991 Hyundai motor vehicle with a value of $1000 and no loan balance. The plaintiff's financial affidavit includes in Schedule A a number of debts totalling $11,892. All of those debts were incurred prior to the retroactive date of the pendente lite order of December 23, 1996. The only debt shown on Schedule A that the plaintiff has made any payments on is the CLP debt with a balance of $870.
The plaintiff's present gross weekly income is $80 with a net income of $65 from Tanfastic. She also has tips averaging $50 weekly for a combined weekly net income of $115.
The defendant is twenty-nine years old. He has been a union CT Page 11704 carpenter for the last eleven years and is currently a union carpenter. He is a high school graduate. He also attended apprentice school for four years following high school graduation. His union benefits include medical, dental and eye health insurance. He also has a $5000 life insurance policy through the union. His last hourly wage increase was in approximately May of 1997, and resulted in an $11 increase weekly. He is in fair health.
The defendant has gross weekly income of $780, and net weekly income of $587. He presently leases a 1990 Ford Taurus. The parties have an $850 security deposit from an ex-landlord.
The court has considered the provision of § 46b-82
regarding the issue of alimony, and has considered the provision of § 46b-81 (c) regarding the issue of property division, and has considered the provision of § 46b-56 regarding the issues of custody and visitation, and has considered the provision of § 46b-84 and the child support guidelines regarding the issue of support, and has considered the provision of § 46b-62
regarding the issue of attorney's fees. The court enters the following orders:
ORDERS
 A. BY WAY OF DISSOLUTION
1. The marriage between the parties is dissolved and each party is declared to be single and unmarried.
B. BY WAY OF ALIMONY
1. No periodic or lump sum alimony is awarded in favor of either party.
2. The defendant is to make available to the plaintiff the medical and dental health insurance coverage as available through the union for the maximum period allowed by law. The parties are to divide equally the cost of such health insurance.
C. BY WAY OF CUSTODY AND VISITATION
1. An order of joint legal custody for the minor child is entered. CT Page 11705
2. The physical residence of the minor child is awarded to the plaintiff. The defendant is awarded reasonable, liberal and flexible rights of visitation.
D. BY WAY OF SUPPORT
1. The defendant is ordered to pay to the plaintiff support in the amount of $145 per week. An immediate wage execution is authorized.
2. The parties shall consult with each other and shall, on a joint basis, make all significant decisions affecting the care and upbringing of the child, including but not limited to, significant decisions regarding his day care, education and non-emergency medical, dental and psychological or psychiatric care. All decisions regarding the child shall be made on the basis of the child's best interest and not with a view to the personal wishes of the parties. In the event that the parties are unable, despite bona fide efforts, to agree on any significant decision regarding the child's care and upbringing and/or visitation, either may seek the ruling of a court of competent jurisdiction with respect thereto.
3. The parties recognize that some medical decisions must be made on an emergency basis and that it may be impractical or impossible to consult thereon or to arrive at a joint decision. After reasonable attempts to reach the other party have failed, and after availing herself or himself of the best professional guidance available under the circumstances, a medical decision shall be made unilaterally.
4. Each of the parties agrees to keep the other informed at all times of the whereabouts of the child if he is with the other, and agrees that if either has knowledge of any illness or injury or other circumstances seriously affecting the health or welfare of the child, that party will promptly notify the other.
5. The parties agree that each shall be entitled to immediate access, from the other party and from third parties, to records and information pertaining to the child including, but not limited to, medical, dental, health and day care or educational records. To that end, the parties shall notify the appropriate authorities regarding the release of such information and, if necessary, shall immediately provide such written authorizations as may be necessary to obtain the release of such information. CT Page 11706
6. Neither party shall do anything which may estrange the child from the other party or injure the opinion of the child as to the mother or father, or act in such a way as to hamper the free and natural development of the child's love and respect for the other party.
7. The husband shall maintain primary health and dental insurance for the minor child so long as it is available to him through his current employer at a nominal cost until such time that the obligation to pay child support terminates. In the event that the husband is unable to provide medical insurance for the child as aforesaid, and the wife is unable to provide health and dental insurance for the child through her employer at a nominal cost, the parties shall purchase a reasonable plan of medical insurance which shall cover the child until such time that the obligation to pay child support terminates and shall divide equally the cost of said insurance. The parties shall divide equally all unreimbursed medical and dental (including orthodontia) expenses.
8. The defendant is to maintain his existing life insurance in the face amount of $5000 available through his place of employment, naming the minor child as irrevocable beneficiary of the policy until such time as his obligation to pay child support terminates.
E. BY WAY OF PROPERTY ORDERS
1. The plaintiff is to pay the following liabilities shown on her financial affidavit and hold the defendant harmless therefrom: (a) GM card, balance approximately $3252; (b) Bank One, balance approximately $1542; (c) Credit Center, balance approximately $101; (d) J.C. Penney, balance approximately $64; (e) Filene's, balance approximately $78; (f) Zales, balance approximately $723.
2. The defendant is to pay the following liabilities shown on his financial affidavit and hold the plaintiff harmless therefrom: (a) Mellon Bank, balance approximately $3327; (b) Citybank, balance approximately $1386; (c) Credit Center, balance approximately $338; (d) Macy's, balance approximately $211; (e) Woman's Counselling Center, balance approximately $519; (f) CLP, balance approximately $870; (g) Jewelers Financial, balance approximately $724; (h) CCCS of Connecticut, balance CT Page 11707 approximately $20.
3. The 1991 Hyundai shown on the plaintiff's financial affidavit is awarded to the plaintiff.
4. The two People's Bank accounts shown on the defendant's financial affidavit, with a balance of approximately $10, is awarded to the defendant.
5. The $850 security deposit from an ex-landlord is divided equally between the parties. The $425 share of the defendant is assigned to the plaintiff and is to be applied to reduce the existing pendente lite arrearage.
F. BY WAY OF ATTORNEY'S FEES
1. No attorney's fees are awarded in favor of either party.
G. PENDENTE LITE ORDERS
1. The pendente lite arrearage is not merged into the judgment. The pendente lite orders remain in effect until this decision is filed.
H. MISCELLANEOUS ORDERS
1. Counsel for the plaintiff is to prepare the judgment file within thirty days and send it to counsel for the defendant for signature and filing.
2. The parties are to exchange copies of their federal and state income tax returns by certified mail, return receipt, or registered mail, return receipt, within fifteen days after such returns have been filed for so long as there is an outstanding support order or an arrearage from any such order.
3. The plaintiff is restored her maiden name of Jennifer P. Zollin.
Axelrod, J.